# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| LOUIS MONTELEONE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 2:19-cv-00887-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| SCHLOMO SCHMUEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 8), or in the alternative, Motion for Summary Judgment, (ECF No. 9),[1] filed by Defendant Schlomo Schmuel ("Defendant").[2]  Plaintiffs Louis Monteleone and Equus Properties LLC (collectively "Plaintiffs") filed a single Response, (ECF No. 13), and Defendant filed a single Reply, (ECF No. 15).

Also pending before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint, (ECF No. 16).  Defendant filed a Response, (ECF No. 19), and Plaintiffs did not file a reply.

## I.   **BACKGROUND**[3]

This case arises from a dispute over a loan obtained to purchase real property located at 1740 Hardrock Street, Las Vegas, Nevada 89156 (the "Property").  Plaintiff Equus Properties LLC ("Equus") is a limited liability company wholly owned by Plaintiff Louis Monteleone ("Monteleone"), a 75-year-old Las Vegas man. (Am. Compl. ¶¶ 4, 5, ECF No. 6).  Plaintiffs

---

[1] The two Motions are identical and request relief in the alternative to one another.
[2] Defendant also filed Declarations, (ECF Nos. 10, 11), in support of his Motions.
[3] This is a summary of the facts Plaintiffs allege in their Amended Complaint and should not be construed as findings of fact.

allege that in or about 2015, Monteleone contacted Nevada mortgage broker Richard Santa ("Santa"), to assist him in purchasing the Property. (*Id.* ¶¶ 7, 9–10). Santa then contacted a California entity, HML Investments ("HML"), which referred Monteleone to Defendant.[4] (*Id.* ¶ 13). Defendant is a hard money lender. (*Id.* ¶ 6). Thereafter, Equus (through Monteleone) executed a note in the principal sum of $487,500.00 (the "Note"), which was payable to Defendant. (*Id.* ¶¶ 6, 13); (Note, Ex. A to Am. Compl., ECF No. 6).[5] The interest rate on the Note was 13 percent, which by its terms, would increase to 21 percent upon the event of a default. (*Id.*); (Am. Compl. ¶ 17). The Note was secured by a Deed of Trust encumbering the Property. (*Id.* ¶ 13). The primary obligor on the Note was Equus. (*See* Note, Ex. A to Am. Compl.). Monteleone was a guarantor on the Note. (*See id.*); (Am. Compl. ¶ 15). Plaintiffs assert that Equus has never conducted any business and has never had any income independent from any contributions from Monteleone. (*Id.* ¶ 16). Plaintiffs allege that neither Santa nor Schmuel asked for, or obtained, any proof of Monteleone's ability to pay the Note. (*Id.* ¶¶ 11, 14). On April 1, 2016, the loan for, and purchase of, the Property were consummated through the combined funding of Monteleone's life savings in the sum of $270,000.00, and monies loaned by Defendant as part of the Note. (*Id.* ¶¶ 4, 18). The monthly installments in the amount of $5,281.25, as set forth in the Note, were never paid by Equus, but instead, were paid from Monteleone's account. (*Id.* ¶ 19). All such payments were accepted by HML, the servicer on the Note. (*Id.*). The Note matured on April 1, 2017. (*Id.* ¶ 20). Monteleone was unable to pay the Note. (*Id.*). On June 30, 2017, Defendant filed a Notice of Default. (*Id.* ¶ 25).

On February 6, 2018, Equus commenced a chapter 11 bankruptcy ("Equus Bankruptcy") in the United States Bankruptcy Court for the District of Nevada. (*Id.* ¶ 21). The Equus

---

[4] Neither Santa nor HML are parties to this action.

[5] Because Plaintiffs attached the Note as an exhibit to the Amended Complaint, the Note constitutes part of the pleading, which the Court can properly consider in ruling on the Motion to Dismiss. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) ("Certain written instruments attached to pleadings may be considered part of the pleading[.]").

Bankruptcy was eventually dismissed on February 8, 2019. (*Id.*).  On December 3, 2018, Defendant filed a Notice of Sale, which asserted a balance under the Note of $681,969.12. (*Id.* ¶ 25).  On December 27, 2018, Monteleone commenced a chapter 13 bankruptcy ("Monteleone Bankruptcy") in the United States Bankruptcy Court for the District of Nevada. (*Id.* ¶ 23).  The Monteleone Bankruptcy was eventually dismissed on March 27, 2019. (*Id.*).  On March 7, 2019, a foreclosure sale of the Property occurred. (*Id.* ¶ 26).  Defendant was the successful bidder on the Property at the approximate amount of $500,000. (*Id.*).

Plaintiffs commenced the instant action on May 28, 2019. (Compl., ECF No. 1). Plaintiffs assert the following claims against Defendant: (1) violations of the Truth and Lending Act (TILA) and the Home Ownership Equity Protection Act (HOEPA); (2) violations of the California Constitution and California Usury Statutes; and (3) wrongful foreclosure. (*See* Am. Compl. ¶¶ 29–57).  On September 3, 2019, Defendant filed a Motion to Dismiss, (ECF No. 8), or in the alternative, Motion for Summary Judgment, (ECF No. 9).  On December 30, 2019, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, (ECF No. 16).  The proposed second amended complaint adds a fraudulent transfer claim against Defendant. (*See* Ex. A to Mot. Leave to Am. Compl. ("Mot. Am."), ECF No. 16).

## II.   **LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys.*, *Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

### A.   Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiffs' Amended Complaint with prejudice.  The Court will address each of Plaintiffs' claims *seriatim*.

#### 1.   *Violations of TILA and HOEPA*

Plaintiffs' first claim alleges that Defendant violated the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1666j; and the Home Ownership and Equity Protection Act (HOEPA), 15 U.S.C. § 1639.  Plaintiffs seek relief in the form of monetary damages and recission of the Note and Deed of Trust. (*See* Am. Compl. ¶¶ 29–43, ECF No. 6).

TILA requires that lenders make specific and conspicuous disclosures prior to closing a mortgage. *See* 15 U.S.C. § 1601.  As stated in congressional findings, TILA's purpose is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare

more readily the various credit terms available to him and avoid the uninformed use of credit." *Id.* In 1994, Congress amended TILA and passed HOEPA with the intent to protect vulnerable consumers from predatory mortgage lending practices. *See* S. Rep. No. 103-69, at 28 (1993) (referring to "the damage that can be caused by unscrupulous creditors making High Cost Mortgages"). HOEPA, among other things, prohibits or restricts disadvantageous prepayment penalties and balloon payments, as well as other certain acts or practices. 15 U.S.C. § 1639.

Here, Defendant argues, and the Court agrees, that Plaintiffs' claim is time-barred. With respect to Plaintiffs' request for money damages, the claim is limited to a one-year statute of limitations. 15 U.S.C. § 1640(e); *Beck v. Nationstar Mortg.*, No. 3:15-cv-00166-MMD-VPC, 2015 WL 6755276, at *6 (D. Nev. Nov. 4, 2015), *aff'd sub nom. Beck v. Nationstar Mortg., LLC*, 700 F. App'x 691 (9th Cir. 2017) ("Any claim for damages arising under TILA is limited by a one-year statute of limitations."). According to the Amended Complaint, the loan was consummated on April 1, 2016. Thus, Plaintiffs had until April 1, 2017, to bring the instant claim. Plaintiffs, however, commenced this action on May 28, 2019—more than two years after the limitations period. (*See* Compl., ECF No. 1).

While Plaintiffs contend that any statute of limitations has been tolled as a result of the bankruptcies of Plaintiffs, the Amended Complaint does not support this conclusion. (Am. Compl. ¶ 32). TILA damages claims are subject to equitable tolling "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quotation omitted). The limitation period commenced when Plaintiffs executed the loan documents on April 1, 2016, because Plaintiffs "could have discovered the alleged disclosure violations and discrepancies at that time." *Id.* Plaintiffs do not allege that they were not given a copy of the Note, and they attach a copy of it to the Amended Complaint. (Note, Ex. A to Am. Compl., ECF No. 6). Moreover, even

assuming that bankruptcy proceedings could serve as a basis for tolling, Plaintiffs' factual allegations show that tolling is nevertheless inapplicable.  Monteleone filed for bankruptcy in February 2018, and Equus filed for bankruptcy in December 2018. (Am. Compl. ¶¶ 21, 23). Thus, there is nothing to toll because the bankruptcy proceedings commenced *after* the one-year limitations period had already expired.

Furthermore, Plaintiffs are not entitled to recission under HOEPA, 15 U.S.C. § 1639, because any such relief is similarly time-barred.  The U.S. Supreme Court has explained that Section 1635(f)

> says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period.  It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.  There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy.

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998).  In other words, Section 1635(f) "*completely extinguishes* the right of rescission at the end of the 3-year period," and it is not subject to equitable tolling. *Id.* at 412 (emphasis added); *Ades v. Citi Mortg., Inc.*, No. 2:10-cv-02104-GMN, 2011 WL 4402754, at *4 (D. Nev. Sept. 20, 2011).  Here, Plaintiff consummated his loan on April 1, 2016, and the applicable three-year period expired on April 1, 2019, thereby completely extinguishing the right of recission.  Because Plaintiffs did not file their claim until May 28, 2019, Plaintiffs are barred from pursuing this cause of action. Accordingly, Defendant's Motion to Dismiss is granted as to Plaintiffs' first claim.  The Court further finds that amendment would be futile.  Therefore, this claim is dismissed with prejudice. ///

### 2.    *Violations of California's Constitution and Usury Statutes*

Plaintiffs' second claim alleges violations of California's constitution and usury statues. Defendant argues this claim should be dismissed because the Deed of Trust includes a choice-of-law provision indicating that Nevada law governs. (Mot. Dismiss ("MTD") at 15–17, ECF No. 8).  Plaintiffs agree that the Deed of Trust contains the Nevada choice-of-law provision. (Am. Compl. ¶ 44) ("The Note and Deed of Trust are not controlling, despite the language that the governing law is Federal Law and the law of the site of the property."); (Deed of Trust at 11, Ex. C to Schmuel Decl., ECF No. 10-3).[6]  But Plaintiffs maintain that California law should apply because California has a greater interest in monitoring the actions of Defendant, a California resident. (Resp. to MTD at 15–16).

"Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)).  The Court will therefore apply Nevada's choice-of-law rules in deciding whether the choice-of-law clause should be enforced.

So long as "the parties acted in good faith and not to evade the law of the real situs of the contract," Nevada's choice-of-law principles permit parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs*, 603 P.2d 270, 273 (Nev. 1979) (citation omitted).  "The situs fixed by the agreement, however, must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum." *Id.*; *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014).

---

[6] In ruling on a Rule 12(b)(6) motion, courts may consider documents that, though not attached to the complaint, accompany the dismissal motion, are relied upon in the complaint, and are not contested as inauthentic. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  The Court may therefore properly consider the Deed of Trust submitted by Defendant.

Here, Plaintiff does not allege the parties sought to evade the real situs of the contract. Indeed, the Property is located in Nevada, not California.  Moreover, Plaintiff does not claim that the situs fixed by the agreement does not have a substantial relation with the transaction. Rather, Plaintiff asserts California has a greater interest in monitoring the actions of Defendant. Accepting the Amended Complaint's allegations as true, the Court finds the agreement has a substantial relationship to the transaction.  The Property is located in Nevada, and Plaintiff, who is a party to the transaction, is a Nevada resident.  The Court further finds that the agreement is not contrary to the public policy of the forum.  The crux of Plaintiffs' claim is that the Note is usurious because according to California's constitution, "usury occurs beyond the higher of 10 percent," and the Note's interest rate was 13 percent and 21 percent upon default. (Am. Compl. ¶¶ 47, 48).  Assuming without deciding that Plaintiffs are correct, Plaintiffs' allegations only establish that the contract is contrary to *California's* public policy.  But Nevada is the forum and its public policy is determinative.  As Defendant correctly points out, Nevada law provides that "parties may agree for the payment of any rate of interest on money due or to become due on any contract, for the compounding of interest if they choose, and for any other charges or fees." NRS 99.050.  Thus, the subject interest rates do not violate Nevada's public policy.  As such, the choice-of-law provision governs and Nevada law controls.  Because California's constitution and usury laws cannot form the basis of Defendant's liability, this claim cannot be cured, and the Court dismisses it with prejudice.

### 3. *Wrongful Foreclosure*

Plaintiffs' third cause of action alleges a claim for wrongful foreclosure.  "An action for the tort of wrongful foreclosure will lay if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Federal Sav. & Loan Ass'n,* 662

P.2d 610, 623 (Nev. 1983); *Markey v. Bank of Am., N.A.*, No. 2:12-cv-00027-LDG, 2013 WL 5492643, at *3 (D. Nev. Sept. 27, 2013), *aff'd*, 675 F. App'x 790 (9th Cir. 2017).

Here, Plaintiffs' Amended Complaint does not allege that Plaintiffs were not in default. In fact, the only inference that may be drawn from the Amended Complaint is that they were in default. Plaintiffs offer no assertions regarding the failure to make any payments since April 2017. (*See* Am. Compl. ¶ 20). Specifically, Plaintiffs do not aver that Equus was current on the mortgage and therefore not in default. Likewise, Plaintiffs do not aver Monteleone honored the guarantee. The Court dismisses this claim with prejudice.

### B.   Plaintiffs' Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give leave [to amend a pleading] when justice so requires," and there is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). The Ninth Circuit has emphasized that Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended the complaint. *See id.* at 1052. Futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003). Futility arises when the amendment is legally insufficient, *Miller v. Rykoff-Sexon, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), or "where the amended complaint would . . . be subject to dismissal[,]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

In support of the Motion, Plaintiffs have attached a proposed second amended complaint in accordance with Local Rule 15-1. Therein, Plaintiffs allege that on July 29, 2019, Defendant consummated and signed a deed in which he transferred as a "gift," the Property from Defendant's ownership to a company called "1740 Hardrock LLC." (Ex. A to Mot. Am., ECF

No. 16).  Among other things, Plaintiffs further allege that the transfer was for a less than reasonable value; that Defendant "believed or reasonably should have believed that he would incur debts beyond his ability to pay as the debts became due"; and that the transfer was made by Defendant with actual intent to "hinder delay or defraud" Plaintiffs from pursuing their rights. (*Id.*).  Based on these allegations, the proposed second amended complaint adds a fourth claim for fraudulent transfer pursuant to NRS 112.180. (*Id.*).  In response, Defendant does not dispute that the transfer of the Property occurred, but argues that the requested amendment is futile because it is based on an inapplicable statute.[7] (Resp. to Mot. Am. at 10, ECF No. 19). The Court agrees.

Fraudulent transfers or conveyances are covered by NRS Chapter 112, the Uniform Fraudulent Transfer Act ("UFTA").  "The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC*, 162 P.3d 870, 872 (Nev. 2007).  The act makes it a fraud for a debtor to transfer or incur obligations on property with the intention of avoiding paying a debt to a creditor. NRS 112.180.  Under NRS 112.150, a "debtor" is a "person who is liable on a claim." NRS 112.150.  Further, a "creditor" is defined as "a person who has a claim," and a "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.*  Thus, in order to establish a cause of action for fraudulent transfer, Plaintiffs would have to provide factual allegations showing they have a "right to payment."

Here, the proposed second amended complaint does not provide facts showing that Defendant is a debtor or that Plaintiffs are creditors for purposes of NRS Chapter 112.  Indeed,

---

[7] Defendant also argues amendment is futile because "Plaintiffs cannot show that [Defendant] had 'actual intent' to fraudulently transfer his interest in [the Property]." (Resp. to Mot. Am. at 11).  In making this argument, Defendant relies on a declaration "filed concurrently with this [Response]," and an exhibit attached to the declaration. (*Id.*).  However, no such declaration or exhibit were filed concurrently with Defendant's Response, (ECF No. 19).

the only allegations supporting a right to payment are those related to Plaintiffs' first and second causes of action (*i.e.*, violations of TILA and HOEPA, and violations of California's usury laws).  However, for the reasons discussed in Part III.A *supra*, those allegations fail and Plaintiffs' first and second causes of action are dismissed with prejudice.  Because the proposed second amended complaint would be subject to dismissal, the Court denies Plaintiffs' Motion, (ECF No. 16), on the basis of futility.[8]

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 9), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended Complaint, (ECF No. 16), is **DENIED**.

The Clerk of the Court shall enter judgment accordingly and close this case.

**DATED** this __20__ day of September, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[8] Defendant also opposes Plaintiffs' Motion arguing bad faith.  Because the Court finds amendment is futile, the Court need not address Defendant's additional argument.